IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 24, 2009

## BRUCE A. SMILEY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 254749     Rebecca J. Stern, Judge**

_____

**No. E2008-02233-CCA-R3-PC - Filed August 7, 2009**

_____

The Petitioner, Bruce A. Smiley, pled guilty in the Hamilton County Criminal Court to one count of rape of a child and one count of especially aggravated sexual exploitation of a minor. Pursuant to the plea agreement, he received a total effective sentence of twenty-three years. Subsequently, the Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered. The post-conviction court denied the petition, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Benjamin L. McGowan, Chattanooga, Tennessee, for the appellant, Bruce A. Smiley.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William H. Cox, III, District Attorney General; and Neal Pinkston, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

At the post-conviction hearing, the Petitioner's trial counsel testified that she was employed by the Public Defender's Office at the time she was appointed to represent the Petitioner and that she represented the Petitioner for approximately eight months. Trial counsel said she saw the Petitioner several times at the jail, and she shared with the Petitioner the discovery she had obtained. Trial counsel recalled that the Petitioner faced forty indictments charging him with rape of a child and especially aggravated sexual exploitation of a minor, Class A and Class B felonies, respectively. She informed the Petitioner that if convicted, he could be sentenced to fifty years.

She said that she was aware the State possessed a forensic report reflecting that there was no physical proof the victim had been penetrated. She said that she would have focused on the report as part of the defense at trial. She acknowledged that she had not obtained the report from the State at the time of the guilty pleas. However, she maintained that the State never alleged that there was any physical proof that the victim had been penetrated by the Petitioner. Instead, trial counsel explained that the main proof the State had against the Petitioner was the testimony of the victim and fifteen to twenty explicit photographs of the victim and an adult male, which were found in the Petitioner's home. Trial counsel advised the Petitioner that the State's proof against him was strong, and she informed him of the potential punishment he faced if he were convicted at trial.

Trial counsel said that when she discussed the inculpatory photographs with the Petitioner, he did not specifically deny or acknowledge that he was the man depicted in the photographs. However, the Petitioner commented that "the photographs didn't show his face and he didn't understand necessarily how there could be an identification that that was in fact his penis that was being shown."

Trial counsel recalled that the State offered a plea bargain which required the Petitioner to plead guilty to one count of rape of a child with a sentence of fifteen years and one count of especially aggravated sexual exploitation of a minor with a sentence of eight years. The sentences would be served consecutively for an effective twenty-three-year sentence. The proposed agreement also provided that the State would dismiss the remaining thirty-eight charges.

Trial counsel recalled that the Petitioner had made some inculpatory statements but that she did not file a motion to suppress the statements. Trial counsel said that she had filed a motion to suppress the incriminating photographs, specifically challenging the search warrant which authorized the search of the Petitioner's home. The photographs were discovered during the search. Trial counsel said that she was prepared for the suppression motion and that the motion "could [have gone] either way." On the day of the suppression hearing, the State told trial counsel that if the Petitioner proceeded with the suppression motion, the State would rescind the plea offer, which had been "on the table" for more than a month. Trial counsel said she was "shaken . . . by this ultimatum" and thought the State was playing "dirty pool." However, she acknowledged that the State had the discretion to rescind the offer. Trial counsel did not inform the trial court that the Petitioner needed more time to consider the plea offer because she feared the State would withdraw the offer. Trial counsel stated that she believed strongly that the Petitioner should accept the State's offer.

Trial counsel said that she could not recall if she and the Petitioner discussed how a trial would impact his mother. Nevertheless, trial counsel said, "I don't think it was a secret that his mother was very concerned." Counsel acknowledged that she may have told the Petitioner that his mother would find a trial stressful; however, she said that she never had a sense that the Petitioner's mother could not handle the stress.

Trial counsel said that she spoke with the Petitioner about the State's ultimatum. She said the Petitioner "was obviously very stressed out," but he seemed to understand everything she told him. Trial counsel informed the Petitioner that he did not have much time to make a decision. Trial

counsel did not recall telling the Petitioner that he had only twenty minutes to decide, but she acknowledged that may have been the time allotted. Trial counsel recalled that the Petitioner wanted to be incarcerated in Bledsoe County to be close to his family. Counsel informed the Petitioner of a procedure whereby the Petitioner could ask the Tennessee Department of Correction for a specific housing assignment after his incarceration. However, she never told the Petitioner that she could guarantee he would receive a specific housing assignment.

Trial counsel said that she reviewed with the Petitioner the rights he would waive by pleading guilty. She opined that the Petitioner "understood what he was doing. And he is a very intelligent man. I think he had no problem grasping what he was giving up." The Petitioner agreed to accept the State's plea bargain and forgo a hearing on his motion to suppress. Therefore, instead of proceeding with the suppression motion, the Petitioner entered best interest pleas to one count of rape of a child and one count of especially aggravated sexual exploitation of a minor.[1]

Trial counsel acknowledged that neither she nor anyone from her office interviewed the victim. She said that at the time of the guilty pleas, she was preparing the case for trial but that she had not received all the discovery and was not yet ready to try the case.

Trial counsel recalled that the victim's mother was "somewhat of a nightmare" and that the Petitioner and the victim's mother were involved in a relationship before the case was prosecuted. Trial counsel could not recall if the Petitioner had asked her to obtain telephone records demonstrating that the victim's mother "obsessively" called the Petitioner before prosecution began; however, trial counsel said that she would not be surprised if the Petitioner had made such a request. Regardless, trial counsel never thought that "it was a defense in this case that these [allegations] were fabricated."

Trial counsel recalled having a conversation with the Petitioner about a potentially helpful witness named "Nessie," a friend of the victim's mother. Trial counsel explained that she typically gave her investigator a list of witnesses to locate. Trial counsel thought the defense may have been attempting to locate Nessie at the time of the guilty pleas.

Trial counsel stated that the indictments against the Petitioner were not specific about the dates of the alleged offenses, charging only that the offenses occurred on a date before September 23, 2003. Trial counsel believed the State "had some information about some time frames," but, at the time of the guilty pleas, she had not yet filed a motion for a bill of particulars. Regardless, she said that "in this case, more than any other case of this nature that I had, there was proof. . . . I could have asked for a bill of particulars, . . . and it would have been important to do that nailing down the dates. But I thought the proof on that was pretty strong."

---

[1] An accused who wishes to plead guilty yet assert his innocence may enter what is known as a "best interest" guilty plea. See North Carolina v. Alford, 400 U.S. 25, 37-38, 91 S. Ct. 160, 167-168 (1970). A trial court may accept such a plea if the court is satisfied that there is a factual basis for the plea. See Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985).

Trial counsel said that early in her representation of the Petitioner, she contemplated having the Petitioner evaluated by psychiatrist Keith Caruso. She said the Petitioner was "incredibly distraught," and she was concerned that he "would not look out for his own best interests." Trial counsel believed that the Petitioner was "so concerned about the victim . . . that he would just fall on his sword to save her from having to go through the prosecution." Trial counsel maintained that she never believed the Petitioner was delusional or could not understand what counsel told him. Instead, counsel feared that the Petitioner would turn down the State's plea offer, an offer counsel believed was "very acceptable," and seek excessive punishment. Counsel said that, initially, the Petitioner was "passive to his detriment" in preparing his defense. However, before trial counsel could arrange for the Petitioner to be evaluated by Dr. Caruso, the Petitioner began "aggressively participating" in his defense, and counsel's concerns were alleviated. Trial counsel said that the Petitioner "was depressed but I didn't think too depressed to understand what he was doing." Counsel maintained that she would not have allowed the Petitioner to proceed with his guilty pleas if she had concerns about his mental health.

Trial counsel said that five weeks prior to the entry of the guilty pleas, the Petitioner's estranged wife, the mother of his children, passed away. Trial counsel recalled that the Petitioner asked her to arrange for him to be released from jail to attend the funeral. Trial counsel cautioned the Petitioner that, given the nature of his charges, the trial court would allow the Petitioner to attend the funeral only if he were shackled and had an escort from the sheriff's department. Trial counsel said, "I don't think he wanted to do that."

The Petitioner testified that he was originally sent to the West Tennessee State Penitentiary for classification, then he was transferred to Hardeman County in West Tennessee. He was told that he would stay there for two and a half years before he could be transferred and that getting an assignment anywhere but West Tennessee would be difficult. The Petitioner said that through the efforts of his family, he was currently confined at the Southeastern Tennessee Correctional Facility in Bledsoe County.

The Petitioner said that trial counsel met with him four or five times while he was in jail. Trial counsel informed the Petitioner of the charges against him, the evidence the State had against him, and the sentences he could receive if convicted at trial. The Petitioner recalled that counsel advised him that he was facing "500 years or so" and that he was not eligible for concurrent sentencing given the nature of the charges. The Petitioner said trial counsel told him that she believed he was too "emotionally unstable . . . to help prepare a defense."

The Petitioner said that he asked trial counsel to look into the "on-going pursuit" of him by the victim's mother. The Petitioner said that he asked trial counsel to obtain his telephone records to show that the victim's mother had called him obsessively and that once the calls stopped, she became angry with the Petitioner. The Petitioner maintained that the allegations of wrongdoing were made around the time the calls stopped. Additionally, the Petitioner believed that the telephone records would provide trial counsel a number to contact "Nessie." The Petitioner believed that Nessie could corroborate his theory that the victim's mother was obsessed with him and that the allegations occurred after "he had done something that angered the mother."

The Petitioner said that he described to trial counsel "a laundry list of life-altering events" he experienced in the two or three years prior to his arrest. The Petitioner explained that he and his father had become estranged. Additionally, the Petitioner said that he had filed for bankruptcy, and, a couple of months later, he had a "pretty substantial traffic accident" that set him back financially. The Petitioner said that shortly thereafter, "a very dear friend's four-year-old child was killed in a traumatic accident," and the Petitioner's son was involved in an accident in which someone died, resulting in litigation which lasted about a year. The Petitioner said that he had taken a couple of leaves of absence from his job at Erlanger Hospital to be treated for stress and anxiety and that, three months prior to his arrest, he was terminated from his employment. The Petitioner said he also informed trial counsel that he was a "pothead" and had smoked marijuana almost daily since he was twelve years old. The Petitioner stated that trial counsel did not express concern about any of his "life-altering events."

The Petitioner recalled that his wife died while he was in jail awaiting trial on the instant charges. The Petitioner said he and his wife were estranged, but he still cared for her. When the Petitioner learned of his wife's death, he asked trial counsel if he could attend the funeral. Trial counsel indicated that, due to the nature of the charges, neither the trial court nor the sheriff would find it "acceptable" for the Petitioner to attend the funeral.

The Petitioner said that on March 8, 2004, he was in a holding cell awaiting a hearing on his motion to suppress. He and trial counsel had not discussed the possibility of entering guilty pleas that day. Trial counsel came to the cell and told the Petitioner that she felt she could win the motion to suppress, but she warned him that if she pursued the motion, the State would rescind its offer. The Petitioner asked trial counsel how long he had to consider the offer, and counsel informed him that he had twenty minutes. The Petitioner said that trial counsel tried to comfort him because she knew he had a difficult decision to make. Trial counsel asked the Petitioner if he would feel better about pleading guilty if she could guarantee his placement in a facility close to his family. The Petitioner said, "I kind of light-heartedly said, yeah, you know someone with the charges I've got obviously is sick, how about Moccasin Bend." Trial counsel told the Petitioner that he had to be placed in a correctional facility, and the Petitioner requested the facility in Bledsoe County or "anything east of Nashville." Trial counsel left the room for five minutes then returned and told the Petitioner that if he agreed to plead guilty, he would be placed in the Bledsoe County facility for the duration of his sentence.

The Petitioner said that trial counsel's promise of incarceration in Bledsoe County "was pretty much the straw that broke the camel's back." He said, "[T]here were no other reasons to take the plea as opposed to go to trial, because I didn't have any information . . . I could take to trial. I mean, there had been nothing really discussed. And being close to my family was the only thing really that made a difference." The Petitioner acknowledged that he did not provide trial counsel with any potential defenses. However, he stated that he "was depending completely on her to get whatever needed to be done to set up a defense." The Petitioner admitted that he had previously been charged with marijuana possession, possession of drug paraphernalia, and various driving infractions. He was unable to recall if he pled guilty to the charges or had a bench trial. Regardless, he maintained that he had never gone through the plea colloquy until the instant case.

The Petitioner said that his decision to plead guilty was also influenced by trial counsel's assertion that a trial would be stressful for the Petitioner's mother and his family. The Petitioner acknowledged that he could read and write and that he had attended two years of college. He said he did not recall trial counsel reviewing with him the rights he would waive by pleading guilty. He conceded he may have signed a waiver of rights form, but he maintained that he was "in such an emotional fog, overwhelmed by grief basically that . . . it didn't matter at that point. . . . I was told to sign and that's what I did."

The Petitioner stated that at the time of the plea, he believed pleading guilty was in his best interest. However, the Petitioner said he no longer held that belief. The Petitioner said that after his incarceration, he did research and learned that he could have filed a motion for a bill of particulars or asked the State to make an election of offenses. The Petitioner felt that trial counsel was ineffective in failing to inform him that he had the option to make the motions.

On cross-examination, the State asked the Petitioner if he had pled guilty of his own free will. The Petitioner responded, "I stood there on my own free will, yes." The Petitioner admitted that he understood the charges and sentences to which he was pleading. He acknowledged that he understood that thirty-eight charges would be dismissed in exchange for his guilty plea to two charges. He said that he did not mention to the trial court that he had questions or concerns, maintaining that he was unaware that he could speak directly to the trial court. The Petitioner said he pled guilty because he "was ready to move on." The Petitioner stated, "I didn't feel like I had any choice other than to take the guilty plea because I had no knowledge of what else was possible." He acknowledged that he was advised of his right to a trial and that he chose to plead guilty. The Petitioner stated that trial counsel had informed him that the State had a number of incriminating photographs. The Petitioner denied that he was the man depicted in the photographs.

At the conclusion of the hearing, the post-conviction court found that trial counsel was not ineffective. The post-conviction court accredited trial counsel's testimony that she did not promise the Petitioner that he could serve his sentence in Bledsoe County. The post-conviction court stated that, under the circumstances, it agreed with trial counsel's assessment that the plea agreement was in the Petitioner's best interest. The court found that the Petitioner understood his rights and that he was given a choice to plead guilty or to go to trial. The court noted that although the Petitioner was dealing with depression, there was no evidence that he was unable to make competent decisions or assist in his defense. Additionally, the court stated that the Petitioner's post-conviction testimony and the transcript of the guilty pleas indicated that the Petitioner knowingly and voluntarily pled guilty. On appeal, the Petitioner challenges the ruling of the post-conviction court.

## II. Analysis

Initially, we note that the Petitioner complains that the post-conviction court failed to set forth written findings of fact following the conclusion of the post-conviction hearing. Tennessee Code Annotated section 40-30-111(b) (2006) mandates that a court considering a post-conviction petition enter a final order and in that order or a written memorandum set forth all the grounds presented, the findings of fact, and the conclusions of law with regard to each ground. Although this requirement is mandatory, a post-conviction court's failure to comply does not always mandate a

reversal of the court's judgment. State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984); see also Michael H. Cammon v. State, No. M2006-01823-CCA-R3-PC, 2007 WL 2409568, at *7 (Tenn. Crim. App. at Nashville, Aug. 23, 2007). "The primary intent of the legislature underlying this requirement is to facilitate appellate review of the lower court's proceedings, and the failure to meet the requirement neither constitutes constitutional abridgement nor renders the conviction or sentence of the appellant void or voidable." Swanson, 680 S.W.2d at 489. Therefore, a court's failure to provide written findings of fact and conclusions of law may be deemed harmless if the court orally set forth sufficient findings on the record. See State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987).

In the instant case, the post-conviction court set forth sufficient findings of fact and conclusions of law at the end of the post-conviction hearing. Therefore, we conclude that the record is sufficient for our review. We now turn to the merits of the Petitioner's post-conviction claims.

To be successful in his claim for post-conviction relief, the Petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

First, the Petitioner contends that his trial counsel was ineffective. A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a Petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the Petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

The Petitioner alleges that trial counsel's failure to conduct an adequate investigation deprived him "of information necessary to make an informed choice regarding a plea." Additionally, the Petitioner claims that trial counsel provided "insufficient protection of [his] rights at the time of his plea, particularly in light of trial counsel's intimate knowledge of [his] tenuous mental state." The Petitioner maintains that

> post-conviction hearing testimony established that trial counsel's assessment of the State's evidence led to her early belief that the case could not be adequately defended and that a plea was [the Petitioner's] only reasonable option. . . . As a direct result, trial counsel conducted virtually no factual investigation, interviewed no state or defense witness, failed to obtain essential and exculpatory forensic reports, and failed to follow up on [the Petitioner's] specific request that witnesses be contacted and evidence examined.

Trial counsel testified she was aware that the State had a report indicating that there was no physical proof that the victim had been sexually penetrated, and she maintained that she would have exploited the lack of physical proof at trial. Trial counsel asserted that the State never alleged that there was physical proof of sexual penetration; the State's proof consisted of the victim's testimony and the incriminating photographs found in the Petitioner's home. Trial counsel said that she had submitted a list of witnesses to her investigator, but the investigator's job had not been completed at the time of the guilty pleas. Regardless, trial counsel said that she feared the Petitioner would not receive a favorable result at trial given the strength of the State's case. Therefore, trial counsel believed that the guilty pleas were in the Petitioner's best interest. Trial counsel so advised the Petitioner, and the Petitioner chose to plead guilty. Trial counsel conceded that at the beginning of her representation, she had been concerned about the Petitioner's depression. However, at the time of the guilty pleas, she no longer had those concerns.

The post-conviction court found that, given the evidence adduced at the post-conviction hearing, the guilty pleas were in the Petitioner's best interest and that counsel was not ineffective for advising the Petitioner to plead guilty. There is nothing in the record to preponderate against this

finding. The Petitioner did not produce any evidence at his post-conviction hearing that trial counsel could have discovered through further investigation nor did he produce any additional information trial counsel could have utilized at his trial. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit any additional witnesses might have offered to the Petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. Accordingly, the Petitioner has failed to demonstrate prejudice in this regard. Therefore, we conclude that the post-conviction court did not err in finding that trial counsel was not ineffective.

The Petitioner also contends that the post-conviction court erred in determining that his guilty pleas were knowingly and voluntarily made. In determining whether a Petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self incrimination, the right to confront witnesses, and the right to a trial by jury. See Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences. See Boykin, 395 U.S. at 244, 89 S. Ct. at 1712.

In State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977), our supreme court set out the procedure trial courts should follow when accepting a guilty plea. Prior to accepting the guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. Id.; see also Tenn. R. Crim. P. 11(c). A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

In determining whether the Petitioner's guilty plea was knowing and voluntary, this court looks to the following factors:

> [T]he relative intelligence of the [Petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel

about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The post-conviction court found that the Petitioner was informed of his rights and that he chose to plead guilty. The court found that the Petitioner's depression did not interfere with his ability to understand the consequences of pleading guilty. The court noted that trial counsel advised the Petitioner to plead guilty and that the Petitioner entered the guilty pleas knowingly and voluntarily. The proof at the post-conviction hearing reflects that the Petitioner was facing forty charges of rape of a child and especially aggravated sexual exploitation of a minor, Class A and B felonies. Trial counsel opined the State had a strong case against the Petitioner, that consecutive sentencing would be imposed, and that the Petitioner could potentially receive a sentence of at least fifty years if he were convicted. Therefore, trial counsel advised the Petitioner to accept the State's offer. At the post-conviction hearing, the Petitioner conceded that he understood the charges he was facing and the sentence he would receive and yet he chose to plead guilty. We conclude that there is no evidence to preponderate against the post-conviction court's finding that the Petitioner knowingly and voluntarily pled guilty.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE